IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


ELIZABETH SKIDMORE                                        PLAINTIFF


           v.                          CIVIL NO. 08-5163


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                           DEFENDANT


### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

### I.      Procedural Background:

Plaintiff protectively filed her current applications for DIB and SSI on October 18, 2004, and October 27, 2004, respectively, alleging an inability to work since March 1, 2000, due to chronic obstructive pulmonary disease (COPD), emphysema, body-wide arthritis, Bipolar II

disorder and a Panic Disorder.[1]  (Tr. 166).  An administrative hearing was held on July 14, 2006, at which Plaintiff appeared with counsel and testified. (Tr. 28-83).

By written decision dated October 13, 2006, the ALJ found that during the relevant time period Plaintiff had an impairment or combination of impairments that were severe. (Tr. 16). The ALJ determined Plaintiff's severe impairments were as follows: COPD, Bipolar II Disorder and a Panic Disorder without agoraphobia.  (Tr. 16).   However, after reviewing all of the evidence presented, she determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 16).  The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform work that does not require exposure to concentrations of dust, fumes, smoke, chemicals, or noxious gases.  Within such an environment, she would be capable of performing non-complex work with simple instructions and judgment within limits.  She should have only superficial contact with the public, incidental to the work performed; and she would require little supervision but more for non-routine work.

---

[1] Plaintiff filed prior DIB and SSI applications for benefits on February 25, 2002. (Tr. 13)  Those applications were denied initially and on reconsideration and a hearing was held on January 7, 2003.  (Tr. 87).  An ALJ issued an unfavorable decision on April 18, 2003. (Tr. 84-97).  The Appeals Council denied a request to review the ALJ's decision on June 24, 2003.  (Tr. 108-111).  Plaintiff did not pursue her remedies for review.  Thus, the Commissioner's previous denial of disability is not now before the court and the court has no jurisdiction to review that action of the Commissioner. Robbins v. Secretary of HHS, 895 F.2d 1223, 1224 (8th Cir. 1990).

Due to the fact that Plaintiff alleged an onset of disability of March 1, 2000, in her current applications, the ALJ addressed the prior applications and found no grounds upon which to reopen the prior applications pursuant to 20 C.F.R. § 416.1487 et seq. The ALJ in the present case also explicitly ruled that the issue of disability on or prior to April 18, 2003 is res judicata. See Robbins v. Secretary of HHS, 895 F.2d 1223, 1224 (8th Cir.1990). The ALJ found that Plaintiff maintained insured states through June 30, 2002. (Tr. 14).  The ALJ noted the prior ALJ's decision dated April 18, 2003, adjudicated the issue of disability beyond the date Plaintiff last met the insured status requirements, and consequently, she denied Plaintiff's application for DIB due to Plaintiff's lack of insured status.  Therefore, Plaintiff's SSI application was the only application in question before the ALJ, which makes the relevant time period the date Plaintiff's SSI application was filed, October 27, 2004, through the date of the ALJ's decision, October 13, 2006.  Title XVI benefits are not payable for the period prior to the application.  See Cruse v. Bowen, 867 F.2d 1183, 1185 (8th Cir. 1989); 20 C.F.R.§§ 416.330, 416.335.

(Tr. 18). With the help of a vocational expert, the ALJ determined Plaintiff could perform other work as a hand packager and a small products assembler.  (Tr. 21, 68-70).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on June 13, 2008.  (Tr. 3-5).  Subsequently, Plaintiff filed this action.  (Doc. 1).  Both parties have filed appeal briefs and this case is before the undersigned for report and recommendation.  (Doc. 7,8).

## II.   **Evidence Presented:**

At the administrative hearing before the ALJ on July 14, 2006, Plaintiff testified she was forty-seven years of age and obtained a tenth grade formal education.  (Tr. 34).  Plaintiff testified she also earned her general equivalency diploma. (Tr. 35).   The record reflects Plaintiff has past relevant work as a poultry dressing worker, a store laborer, a material handler, a deli cutter/slicer, and a dishwasher. (Tr. 50-52).

Medical evidence dated prior to the relevant time period reveals Plaintiff sought treatment for Dysthymia and Dependent Personality Disorder; musculoskeletal pain; asthmatic bronchitis; anxiety; mild osteoarthritis; tendinitis of the right hand and wrist; and right knee and ankle pain. (Tr. 283-288, 295-301, 345-358, 556-557).

Pertinent medical evidence during the relevant time period of April 19, 2003, through October 13, 2006, reflects the following. On April 3, 2004, Plaintiff entered the Siloam Springs Memorial Hospital (Siloam) emergency room with complaints of right ankle pain and swelling since the previous night. (Tr. 316-320).  Plaintiff reported she had a bad sprain three weeks ago. X-rays of Plaintiff's right foot revealed "no acute abnormality."  (Tr. 320).  Plaintiff was diagnosed with a soft tissue knot of the right foot with probable tendon irritations.  (Tr. 319).

Plaintiff was given four Vicodin and instructed to limit weight bearing with the use of crutches. (Tr. 316). Plaintiff was to follow-up with her primary care physician if the pain persisted.

On July 21, 2004, Plaintiff entered the Siloam emergency room complaining of an acute onset of stabbing chest pain. (Tr. 309-315). Plaintiff reported experiencing similar symptoms eight to nine years ago. (Tr. 310). Chest x-rays were unremarkable and an EKG was normal. (Tr. 311, 315). Plaintiff was diagnosed with atypical chest pain that was suspected to be musculoskeletal in nature. Plaintiff was discharged in stable condition and instructed to follow-up with her primary care physician in one to two days. (Tr. 309).

Plaintiff returned to the Siloam emergency room on July 24, 2004, with complaints of chest pain. (Tr. 305-308). Plaintiff reported feeling weak and tired. Chest x-rays revealed "hyperexpansive changes of emphysema with no acute disease." (Tr. 308). Plaintiff was diagnosed with acute chest wall pain and treated with medication. Plaintiff was encouraged to discontinue smoking and to follow-up with her primary care physician if her symptoms persisted.

In an office visit dated August 3, 2004, Dr. David J. Tucker noted Plaintiff was in for a follow-up following an emergency room visit for chest pain. (Tr. 294). Upon examination, Dr. Tucker noted Plaintiff had marked tenderness of the costochondral cartilage, some chest wall tenderness and some mild epigastric tenderness. Plaintiff was diagnosed with "chest pain, probably musculoskeletal in origin." Dr. Tucker started Plaintiff on Bextra and recommended she get an upper GI and EST (exercise stress test). (Tr. 294).

On August 5, 2004, Dr. Tucker noted Plaintiff's EST showed no signs of ischemia but her upper GI revealed a small duodenal ulcer. (Tr. 290, 293). Plaintiff was diagnosed with a peptic ulcer and chest pain.

On October 25, 2004, Plaintiff underwent a diagnostic interview at Ozark Guidance Center.  (Tr. 400-402).   Ms. Megan Lesher, LPC, noted Plaintiff presented with Bipolar symptoms and a history of trauma.  Plaintiff reported having problems with depression and unstable moods with frequent crying.  Plaintiff reported an inability to keep track of her train of thoughts and memory problems.  Plaintiff reported "a lot of abuse" as a child.  She also reported chronic pain problems from arthritis.  Ms. Lesher noted Plaintiff was treated for a nervous breakdown when she was fifteen that led to a hospitalization.  Plaintiff reported being diagnosed with a Bipolar Disorder several years ago and was taking Wellbutrin prescribed by her physician. Plaintiff reported she had been jailed frequently during her drinking days.  Ms. Lesher noted Plaintiff was neatly groomed and made direct eye contact.  Plaintiff's affect was blunted and her mood was somewhat anxious and depressed.  Plaintiff's memory was intact for recent and remote events.  Plaintiff denied suicidal or homicidal ideation while noting both in the distant past. Ms. Lesher opined Plaintiff's insight and present judgment appeared good and estimated Plaintiff was functioning above the average range of intelligence.  Plaintiff was diagnosed with Bipolar I, last episode severe depression without psych; post traumatic stress disorder, rule/out; and alcohol dependence, in remission.  Ms. Lesher opined Plaintiff's Global Assessment of Functioning (GAF) score to be 45.  It was recommended that Plaintiff undergo individual counseling and psychiatric intervention focusing on mood stabilization and improving coping skills.

On December 17, 2004, Plaintiff reported decreasing her Wellbutrin dosage left her more irritable, hyper and angry.  (Tr. 393).  Dr. Edwin C. Jones noted before Plaintiff did not get out because she was depressed but now Plaintiff does not get out because she is too angry.  Plaintiff

reported the Trileptal helped with sleep. Dr. Jones noted, in the past Plaintiff had problems with the use of Prozac. Upon observation, Dr. Jones noted Plaintiff was tense and anxious but not as depressed. Dr. Jones diagnosed Plaintiff with "Bipolar II versus Major Depression Recurrent Generalized Anxiety Disorder With Panic and Agoraphobia." Dr. Jones discontinued Plaintiff's use of Wellbutrin and started Plaintiff on Cymbalta.

On January 7, 2005, Plaintiff reported Cymbalta was helping and that she was less depressed. (Tr. 390). Plaintiff reported she had some trouble with her stomach initially but was no longer having these issues. Plaintiff reported the Trileptal was doing nothing for her sleep. Dr. Jones noted Plaintiff's mood and affect were good. Dr. Jones observed "low to moderate grade anxiety and depression." Plaintiff was to continue using Cymbalta, to discontinue the use of Trileptal and to start Seroquel.

On January 25, 2005, Dr. Jerry Henderson, a non-examining medical consultant, completed a Psychiatric Review Technique Form opining Plaintiff had mild restrictions of her activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration persistence or pace; and had no episodes of decompensation each of extended duration. (Tr. 407-422). Dr. Henderson opined that the medical evidence did not establish the presence of the "C" criteria of the Listings. (Tr. 418). Dr. Henderson stated the following:

> Claimant has a history of outpt. (sic) Psychiatric treatment and remote inpt. (sic) [treatment]. Available [treatment] records indicate no psychotic features and no evidence indicating areas of marked limitations. Overall MER supports unskilled capacity.

AO72A
(Rev. 8/82)

(Tr. 419).  After reviewing the evidence of record, Dr. Jay Rankin affirmed Dr. Henderson's opinion on May 13, 2005.  (Tr. 407).

On January 25th, Dr. Henderson also completed a mental RFC assessment stating Plaintiff had moderate limitations in the following areas: the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to set realistic goals or make plans independently of others.  (Tr. 403-406).  Dr. Henderson concluded:

> The Claimant is able to perform work where interpersonal contact is routine but superficial, e.g. grocery checker; complexity of tasks is learned by experience, several variables, judgment within limits; supervision required is little for routine but detailed for non-routine.

(Tr. 405).  After reviewing the evidence of record, Dr. Jay Rankin affirmed Dr. Henderson's opinion on May 13, 2005.  (Tr. 405).

On January 28, 2005, Plaintiff underwent a general physical examination performed by Dr. J. Garrett.  (Tr. 367-372).  Dr. Garrett noted Plaintiff's alleged disability due to a Bipolar Disorder (diagnosed three weeks ago), emphysema, arthritis, an eating disorder and tendinitis in her wrists.  Upon examination, Dr. Garrett noted Plaintiff had full range of motion of her spine and extremities with no presence of muscle spasm, weakness or atrophy.  Dr. Garrett noted Plaintiff could hold a pen and write; touch fingertips to palm; grip; oppose thumb to fingers; pick up a coin; stand and walk without assistive devices; walk on heel and toes; and squat and arise

-7-

from a squatting position. Dr. Garrett diagnosed Plaintiff with a Bipolar Disorder by history. Based on his evaluation, Dr. Garrett opined Plaintiff had no limitations in her ability to walk, stand, sit, lift, carry, handle, finger, see, hear or speak

On February 4, 2005, Plaintiff reported her medication was working well. (Tr. 387). Dr. Jones noted Plaintiff was not having any problems or side effects. Plaintiff reported she was feeling better but did note she felt tired. Upon observation, Dr. Jones noted Plaintiff's mood and affect were good. Dr. Jones reported there was no evidence of danger, psychosis or manic behaviors. Plaintiff was to continue with her medication, to apply for ICP for medication payment assistance, to continue counseling and to return in two months.

On April 8, 2005, Plaintiff reported the Seroquel and Cymbalta worked well but she was having difficulty obtaining the medicine. (Tr. 486). Plaintiff reported she was not eligible for ICP because her husband made too much money, and that she could not afford to buy the medication on her own. Upon observation, Dr. Jones noted Plaintiff's mood and affect were good. Dr. Jones noted Plaintiff also exhibited low-grade anxiety and depression. Dr. Jones diagnosed Plaintiff with "Bipolar II Disorder vs. Major Depression; and Generalized Anxiety Disorder w/panic and agoraphobia." Plaintiff was given samples of Seroquel and was to stop by the other office to receive samples of Cymbalta.

On May 20, 2005, after reviewing the medical evidence of record, Dr. Alice Davidson, a non-examining medical consultant, opined Plaintiff's physical impairments would be rated "NOT severe." (Tr. 424).

On June 6, 2005, Plaintiff underwent a consultative mental status and evaluation of adaptive functioning performed by Dr. Gene Chambers. (Tr. 362-366). Dr. Chambers noted

-8-

Plaintiff's complaints of tendinitis and an inability to sit down due to pain in her neck and shoulder. (Tr. 362). Plaintiff reported if she stood for too long her legs would hurt. Plaintiff reported difficulty sleeping and an inability to cope. Plaintiff also reported she had arthritis, asthma, breathing difficulties and that she was Bipolar. Dr. Chambers noted Plaintiff reported for the past year and a half she had not liked to be around people because they made her mad. Plaintiff also reported experiencing panic attacks. Plaintiff's medications consisted of Cymbalta, Trileptal, Celebrex, Albuterol and Atrovent. Plaintiff also reported she used a breathing machine at home four times a day. (Tr. 363). Plaintiff reported she recently started back at Ozark Guidance Center. Dr. Chambers noted Plaintiff had a cooperative, serious and frank attitude and behavior. After evaluating Plaintiff, Dr. Chambers diagnosed Plaintiff with Bipolar Disorder, most recent episode, manic (by history); Panic Disorder without Agoraphobia; and Borderline Personality traits. Dr. Chambers gave Plaintiff a GAF score of 70.

Dr. Chambers also completed an evaluation of adaptive functioning. (Tr. 365-366). Plaintiff was noted to communicate effectively with no limitations in speech or language. Dr. Chambers noted Plaintiff lived with her husband and reported they got along fairly well most of the time. Plaintiff reported seeing her daughter two to three times a week and a friend every day. Plaintiff reported she avoided her neighbors because they were "trashy." Dr. Chambers noted Plaintiff had no difficulties bathing or dressing herself or cooperating with medical advice. Plaintiff reported no problems driving. Plaintiff reported her husband or friend did the shopping. Plaintiff reported she was able to clean dishes and do most things in five or ten minute increments. Dr. Chambers observed no physical limitations and opined her estimated IQ to be 80 or greater.

On June 8, 2005, Diane H. Lyddon, MNSC, APN, reported Plaintiff missed her appointment last week with Dr. Jones as she thought her appointment was later in the afternoon. (Tr. 482).  Plaintiff reported the last three weeks had been rather stressful, as she had been keeping her three granddaughters, ages, three, four and five, for two weeks.  Plaintiff reported her watching these three grandchildren had caused a lot of conflict between her two daughters. Plaintiff reported she and her husband recently moved into a home that needs a lot of work. Nurse Lyddon noted Plaintiff was not eligible for the ICP program as her husband made too much money.  Upon observation, Nurse Lyddon noted Plaintiff had good eye contact.  Plaintiff's speech was a little rapid but was normal in tone and rhythm.  Plaintiff was a little fidgety and her affect remained a little anxious.  Plaintiff denied suicidal or homicidal ideation.  Plaintiff was given samples of her medication.

On July 21, 2005, Plaintiff entered the Siloam emergency room with complaints of a cough and chest tightness.  (Tr. 495).  Plaintiff reported her prescription inhalers were not working.  Plaintiff reported her medications consisted of Cymbalta, Seroquel, Albuterol (inhaler and nebulizer) and Atrovent.  After examining Plaintiff and reviewing chest x-rays, Dr. Steven Johnson diagnosed Plaintiff with asthma, acute exacerbation and pneumonia.  (Tr. 497-499). Plaintiff was prescribed Levaquin and discharged home in stable condition.  (Tr. 500).  Plaintiff was to follow-up with her primary care physician for a recheck in two days.

On July 29, 2005, Dr. Jones noted Plaintiff's complaints of stress.  (Tr. 473).  Dr. Jones reported in spite of stresses, Plaintiff's mood and affect were good.  Plaintiff was to continue taking Cymbalta and Seroquel.

-10-

On August 19, 2005, Plaintiff complained of an inability to sleep over one to two hours a night for the past week. (Tr. 464). Dr. Jones noted Plaintiff was stressed but her depression was better. Plaintiff was to continue taking Cymbalta and to increase her Seroquel.

On September 23, 2005, Dr. Jones noted Plaintiff was more withdrawn. (Tr. 457). Dr. Jones noted Plaintiff was more anxious with some vague suicidal ideation but no plan. Upon observation, Dr. Jones noted Plaintiff was tense, stressed and withdrawn. Dr. Jones diagnosed Plaintiff with a Panic Disorder with agoraphobia. Plaintiff was to increase her Cymbalta dosage.

On October 21, 2005, Dr. Jones noted Plaintiff was "doing better." (Tr. 448). Plaintiff reported that increasing her Cymbalta had helped and her depression was less. Upon observation, Dr. Jones noted Plaintiff's mood and affect were good and there was no evidence of danger. Plaintiff was diagnosed with Panic Disorder with Agoraphobia. Plaintiff was to continue with her medication and therapy.

On December 16, 2005, Dr. Jones noted Plaintiff's complaints of not sleeping and having a decreased sex drive since her hysterectomy. (Tr. 435). Dr. Jones noted Plaintiff was under a lot of stress due to her husband's legal problems. Plaintiff was to maintain her Cymbalta dosage and to increase her Seroquel.

On January 20, 2006, Dr. Jones noted Plaintiff had decreased her Seroquel and was feeling better and was less stressed but was not sleeping. (Tr. 428). Upon observation, Dr. Jones noted Plaintiff's mood and affect were better without weight gain. Plaintiff was diagnosed with a Generalized Anxiety Disorder.

On March 3, 2006, Plaintiff also saw Dr. Jones. (Tr. 515). Plaintiff complained of stress. Plaintiff reported her husband was in jail and her mother's van broke down. Plaintiff reported

-11-

she took pain medication that was helping her sleep.  Dr. Jones noted Plaintiff was under many "situational stresses," but was overall doing well.  Plaintiff was diagnosed with a Generalized Anxiety Disorder.  Plaintiff was given Cymbalta samples and instructed to decrease her Seroquel dosage.  Plaintiff was to continue counseling and to return in two months.

On April 5, 2006, Plaintiff was seen by Nurse Lyddon for a medication check. (Tr. 510). Plaintiff reported her moods were unstable.   Plaintiff reported she was babysitting her grandchildren.  Plaintiff complained of problems with arthritis and reported they had to move her bedroom downstairs because she had fallen several times on the stairs.  Plaintiff reported she had arthritis and tendinitis in her feet.  Nurse Lyddon noted Plaintiff brought her granddaughter with her to the appointment.  Upon observation, Nurse Lyddon noted Plaintiff had good eye contact and normal speech.  Nurse Lyddon noted Plaintiff was not restless or fidgety and exhibited no abnormal movements.  Plaintiff denied suicidal or homicidal ideation.  Plaintiff was diagnosed with a Generalized Anxiety Disorder.  Both her Cymbalta and Seroquel dosages were increased and it was recommended that she continue counseling.

Treatment notes dated April 26, 2006, report Plaintiff had a mildly displaced diaphyseal 5th metatarsal fracture. (Tr. 502).  Plaintiff reported she had been chasing her granddaughter and tripped.  Dr. B. Raye Mitchell, Jr., recommended placing Plaintiff in a boot.  Plaintiff was instructed to weight-bear as tolerated.  Dr. Mitchell noted this type of fracture was slow to heal but seldom required surgery.  Plaintiff was to return in one month.

On May 3, 2006, Plaintiff was seen by Nurse Lyddon for medication management.  (Tr. 539).  Nurse Lyddon noted Plaintiff broke her foot three weeks ago and that her pain had increased since her doctor told her to start walking on her foot.  Plaintiff reported she continued

-12-

to take Vicodin, which she did not like, but it helped her pain. Plaintiff reported her granddaughters father shot himself recently leaving the four children. Plaintiff reported her disability hearing was coming up and that she had tried to get disability since 1996, and hoped it would finally go through. Plaintiff reported the Cymbalta had been very good and her moods had been stable. Plaintiff reported she was sleeping well at night. Upon examination, Nurse Lyddon noted Plaintiff had good eye contact and her speech continued to be a little bit rapid but normal in rhythm and tone. Plaintiff was noted to be a little fidgety but without abnormal movements. Plaintiff denied suicidal or homicidal ideation. Plaintiff was diagnosed with a Generalized Anxiety Disorder and "arthritis, fractured left foot." Plaintiff was given samples of her medication and instructed to return in two months.

On June 28, 2006, Plaintiff was seen by Nurse Lyddon for a medication check. (Tr. 529). Nurse Lyddon noted Plaintiff was not doing well and had been having difficulty sleeping. Plaintiff reported she has a female roommate living with her to help share expenses; however, both ladies were unemployed. Upon observation, Nurse Lyddon noted Plaintiff had no movement or thought disorder, but she was anxious and sad. Nurse Lyddon opined Plaintiff's mood and affect was understandable given her circumstances. Plaintiff was to continue with her Cymbalta and her Seroquel dosage was increased.

On June 29, 2006, Plaintiff entered into the Northwest Medical Center emergency room complaining of weakness. (Tr. 544-554). Plaintiff reported she had been out in the heat the previous day and had become overheated. Plaintiff reported she drank gator-aid the previous night but woke up this morning feeling bad with a general malaise. (Tr. 546). Plaintiff was diagnosed with heat exhaustion, given instructions which included drinking fluids and resting

-13-

and discharged home in stable condition.  (Tr. 549).  Plaintiff was also given a work release for one day. (Tr. 548).

The record reflects that along with medication management to treat Plaintiff's mental impairments, Plaintiff participated in individual therapy sessions from November 8, 2004, through August 4, 2006.[2]  These therapy notes reveal Plaintiff discussed her concerns about anger, depression, anxiety and financial problems.  The therapy notes indicate Plaintiff also experienced situational stressors, including her husband's arrest and conviction for the possession of drugs, financial problems and relationship problems with her daughters and friends.  Plaintiff's therapist noted that with medication adjustments and coping techniques Plaintiff was able to work through these issues.  There are also numerous notations revealing Plaintiff's therapist observed no mental problems during therapy sessions.

## III.   Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have

---

[2]The therapy notes can be found on the following pages of the transcript: 379, 381, 383, 385, 388, 391, 393, 394, 396, 398,426, 429, 431, 433, 436, 440, 442, 444, 446, 449, 451, 453, 455, 458, 460, 462, 465, 467, 471, 474, 476, 478, 480, 484, 504,506, 508, 511, 513, 516, 518, 520, 522, 524, 527, 531, 533, 535, 537, 541.

AO72A
(Rev. 8/82)

decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

A.      **The Evaluation Process**:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §§ 404.1520, 416.920.  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work

-15-

experience in light of her residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

## IV.   Discussion:

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled. Specifically, Plaintiff alleges the ALJ erred in determining Plaintiff did not meet a Listing specified in the Listing of Impairments.  Defendant contends the record supports the ALJ's determination that Plaintiff was not disabled through the date of the ALJ decision.

### A.   Plaintiff's Alleged Meeting of Listing 12.04 and 12.06:

Plaintiff's contends the ALJ improperly found that she did not meet Listing 12.04 for Affective Disorders (Listing 12.04) and 12.06 for Anxiety Related Disorders (Listing 12.06). 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04, 12.06.  Defendant contends there is substantial evidence in the record to support the ALJ's determination that Plaintiff does not meet Listing 12.04 or Listing 12.06.

The burden of proof is on the Plaintiff to establish that her impairment meets or equals a listing.  See Sullivan v. Zebley, 493 U.S. 521, 530-31, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). To meet a listing, an impairment must meet all of the listing's specified criteria. Id. at 530, 110 S.Ct. 885 ("An impairment that manifests only some of these criteria, no matter how severely, does not qualify."); Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004).  "Medical equivalence must be based on medical findings." 20 C.F.R. § 416.926(b) (2003); Sullivan, 493 U.S. at 531,  110 S.Ct. 885 ("a claimant ... must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment").  A review of the ALJ's decision reveals the ALJ explicitly addressed Listing 12.04 and Listing12.06 and determined Plaintiff did not

-16-

meet the specified criteria.[3]  (Tr. 16-18).

   The ALJ determined that Plaintiff's mental symptoms did meet the "A" criteria of Listing 12.04 and Listing 12.06; however, he determined Plaintiff did not meet the "B" criteria of Listings.  (Tr. 16).  Specifically, the ALJ determined Plaintiff had moderate restrictions of activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties maintaining concentration, persistence or pace; and one episode of decompensation.  (Tr.  18). A review of the record reveals during the relevant time period, Plaintiff was able to take care of her personal needs; to babysit her grandchildren off and on during this time, up to ten hours a day; to act as a sponsor for someone in Alcoholics Anonymous; to look into setting up Narcotics Anonymous meetings at her home;  to set up and participate in a garage sale to earn money; to make crafts; to look into setting up a home business selling products; to discuss returning to school; to volunteer to help people from New Orleans displaced by the hurricane; and to look for ways of getting more people in her life.  (Tr.  379, 385, 429, 433, 446, 451, 454, 460, 462, 465, 476, 478, 480, 482, 482, 502, 510, 513, 518, 527).  Plaintiff was also able to enjoy the holidays. (Tr. 429).  In August of 2006, Plaintiff reported to her therapist that she could not get a full-time job because it would hurt her chances of getting disability, but she was going to look into getting a part-time job.  (Tr. 520).

---

[3]Listing 12.04 for Affective Disorders requires a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  20 C.F.R. Pt. 404, Subpt. P, App. 1 , 12.04.  Listing 12.06 for Anxiety Related Disorders means anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms.  20 C.F.R. Pt. 404, Subpt. P, App. 1 , 12.06.  In order to meet Listing 12.04 or 12.06, Plaintiff must meet criteria "A" and criteria "B" of the respective Listing, or criteria "C" of the respective Listing.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04, 12.06.

The court acknowledges that the ALJ did not explicitly address the "C" criteria when finding Plaintiff did not meet Listing 12.04 and Listing 12.06.  However, a review of the record clearly shows Plaintiff failed to establish a "medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities;" or to show her impairment "has resulted in complete inability to function independently outside the area of one's home" as is required by the criteria "C" of Listing 12.04 and Listing 12.06, respectively.  Further, after reviewing the record, Dr. Henderson opined Plaintiff did not meet the "C" criteria for Listing 12.04 or Listing 12.06.  (Tr.  418).

Based on the above, we find substantial evidence to support the ALJ's determination that Plaintiff does not meet Listing 12.04 or Listing 12.06

**B.**     **Subjective Complaints and Credibility Analysis:**

In disability determinations, credibility assessments are the province of the ALJ.  Onstead v. Sullivan, 962 F.2d 803, 805 (8th Cir. 1992).  This court will not substitute its judgment for that of the trier of fact, Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996), nor will we disturb the decision of any ALJ who seriously considers, but for good reason explicitly discredits, a claimant's testimony of disabling pain. Reed v. Sullivan, 988 F.2d 812, 815 (8th Cir. 1993). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id.  As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  We believe the ALJ adequately evaluated the factors set forth in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir.

-18-

1984), and conclude there is substantial evidence supporting the ALJ's determination that Plaintiff's complaints were not fully credible.

With regard to Plaintiff's physical impairments, the ALJ found that Plaintiff's COPD was a severe impairment. A review of the medical evidence reveals Plaintiff has been diagnosed with various respiratory impairments over the years and that Plaintiff does have an Albuterol inhaler that she uses as needed. While Plaintiff reports she must use an Albuterol Nebulizer four times a day, the record fails to show Plaintiff was required to use this Nebulizer with such regularity. The record also shows despite recommendations by her treating physicians to stop smoking, Plaintiff has continued to smoke. (Tr. 307, 546). Based on the record as a whole, we find substantial evidence to support the ALJ's determination that Plaintiff did not have a disabling respiratory impairment.

Regarding Plaintiff's alleged arthritis, the record reveals Plaintiff complained periodically of having pain, particularly in her legs; however, Plaintiff rarely sought medical treatment for this alleged disabling pain. See Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure to seek treatment inconsistent with allegations of pain). Furthermore, after examining Plaintiff in January of 2005, Dr. Garrett noted Plaintiff had full range of motion of her spine and extremities with no presence of muscle spasm, weakness or atrophy. Dr. Garrett found Plaintiff could hold a pen and write; touch fingertips to palm; grip; oppose thumb to fingers; pick up a coin; stand and walk without assistive devices; walk on heel and toes; and squat and arise from a squatting position. Based on his evaluation, Dr. Garrett opined Plaintiff had no limitations in her ability to walk, stand, sit, lift, carry, handle, finger, see, hear or speak. The record also shows in December of 2005, Plaintiff denied being in pain. (Tr. 433). Based

-19-

on the record as a whole, we find substantial evidence to support the ALJ's determination that Plaintiff does not have disabling arthritis.

Regarding Plaintiff's mental impairments, the record reflects Plaintiff sought regular treatment for depression and anxiety. However, a review of the record shows, with the exception of situational stressors brought on by her husband's arrest and subsequent conviction of possession of drugs and the financial stressors brought on by his actions, Plaintiff's mental impairments were successfully managed with therapy and medication. See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (impairments amenable to treatment not disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (citations omitted) (an impairment which can be controlled by treatment or medication is not considered disabling). Furthermore, on numerous occasions, Plaintiff's therapist noted she did not observe any signs of depression or anxiety in Plaintiff. (Tr. 426, 429, 431, 449, 462, 465, 467, 471, 476, 504, 518). Based on the record as a whole, we find substantial evidence to support the ALJ's determination that plaintiff does not have a disabling mental impairment.

Plaintiff's subjective complaints are also inconsistent with evidence regarding her daily activities. The record shows Plaintiff was able to babysit her grandchildren, make crafts, counsel someone in Alcoholics Anonymous and volunteer to help people. Plaintiff also reported she was able to take care of her pets, with the occasional help from her husband; to do some household chores; to take care of her personal needs; and to play video in her leisure time. (Tr. 198, 364, 366). In August of 2006, Plaintiff also reported she was going to look for some part-time work as she could not work full-time and be granted disability. This level of activity belies Plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to

-20-

perform such activities contradicts a Plaintiff's subjective allegations of disability.  See Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store).

Therefore, although it is clear that Plaintiff has some limitations, she has not established that she is unable to engage in any gainful activity.  See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability).  Neither the medical evidence nor the reports concerning her daily activities support Plaintiff's contention of total disability.  Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### C.   RFC Assessment:

We next turn to the ALJ's assessment of Plaintiff's RFC.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  Lewis v.

-21-

Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

In the present case, the ALJ considered the medical assessments of examining agency medical consultants, Plaintiff's subjective complaints, and Plaintiff's medical records.  Plaintiff's capacity to perform this level of work is supported by the fact that Plaintiff's treating and examining physicians placed no restrictions on her activities that would preclude performing the RFC determined.  See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability).  Based on the record, we find substantial evidence to support the ALJ's RFC determination.

>    **D.**    **Hypothetical Proposed to Vocational Expert:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, we find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments do not preclude her from performing other work as a hand packer and a small products assembler.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V.    Conclusion:**

Based on the foregoing, we recommend affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have ten days from receipt of our report and**

-22-

**recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The**

**failure to file timely objections may result in waiver of the right to appeal questions of fact.**

**The parties are reminded that objections must be both timely and specific to trigger de novo**

**review by the district court.**

DATED this 16th day of November 2009.


/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-23-